UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
WU JIANG,

              Plaintiff,

      - against -

RIDGE TOOL COMPANY, EMERSON
ELECTRIC CO., HOME DEPOT U.S.A., INC.,
and JOHN DOES 1–10,

              Defendants.
-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
15-CV-4124 (RRM) (PK)

ROSLYNN R. MAUSKOPF, United States District Judge.

Plaintiff Wu Jiang commenced this action following an injury he sustained while using a Ridgid brand 12 U.S. Gallon Wet/Dry Vacuum ("the Vacuum"). He originally brought claims for strict products liability, negligence, and breach of implied warranty against defendants Ridge Tool Company, Emerson Electric Co., Home Depot U.S.A., Inc., and John Does 1–10. (Compl. (Doc No. 1).) Jiang later opted to pursue only his strict products liability claim, under a failure-to-warn theory. (Civil Conference Order (Doc. No. 18) at 1).[1] Defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Defs.' Mot. Summ. J. (Doc. No. 24).) Jiang opposes the motion. (Pl.'s Opp'n (Doc. No. 26).) For the reasons set forth below, defendants' motion is granted.

I.      BACKGROUND

The following facts are taken from the record and are construed in the light most favorable to the plaintiff. They are undisputed unless noted. On August 15, 2014, Jiang was working on refinishing a floor of a property located at 86 Bliss Road, Newport, Rhode Island.

---

[1] For ease of reference, all citations to Court documents refer to Electronic Case Filing System ("ECF") pagination.

(Defs.' 56.1 Statement, Ex. B (Doc. No. 23-4) at 4–5; Pl.'s 56.1 Statement (Doc. No. 25) ¶ 57.) Jiang applied Minwax High-Build Polyurethane ("Minwax") to the wood floor, and approximately 18 hours later, he began the project of sanding the floor with an orbital floor polisher. (Defs.' 56.1 Statement, Ex. B at 7.) He then used his Ridgid Wet/Dry Vacuum to collect the sanding dust that was created by the sanding process. (Jiang Dep. at 259:22–260:4). Jiang noticed smoke emanating from the Vacuum, so he unplugged it and picked it up by its handles to carry it to the sink in the next room. (Defs.' 56.1 Statement, Ex. B. at 5; Jiang Dep. 260:5–25, 274:5–16.) When he lifted it, the bottom of the Vacuum detached and flames erupted from it, badly burning Jiang's arm. (Defs.' 56.1 Statement, Ex. B. at 5.)

Jiang is a Chinese citizen who immigrated to the United States in 2002. (Jiang Dep. at 24:2–11.) He can speak English well enough to engage in simple conversation and interact with English-speaking customers, and he can read well enough to understand signs on the street. (*Id.* at 6:6–7:11; 12:16–20.) In 2004, Jiang founded "Honor Construction, Inc.," a home improvement business. (*Id.* at 48:14–24.) Through Honor Construction, he worked as a self-employed general contractor for at least 10 years prior to the incident leading to this action. (*Id.* at 48:14–24; Pl.'s 56.1 Statement ¶ 84.)

While working as a contractor, Jiang purchased multiple Ridgid Wet/Dry Vacuums, though he does not remember if they were all 12-gallon models like the one at issue here. (Jiang Dep. at 126:13–127:20; Defs.' 56.1 Statement, Ex. C (Doc. No. 23-5) at 4.) The Vacuum involved in the incident here bears the following warning label, prominently affixed to the lid:



(Pl.'s 56.1 Statement, Ex. H (Doc. No. 25-8).) The warning label contains the following

language:

**⚠ WARNING / ADVERTENCIA / AVERTISSEMENT**

| For your own safety, read and understand owner's manual. Do not run unattended. Do not pick up hot ashes, coals, toxic, flammable or other hazardous materials. Do not use around explosive liquids or vapors. | Para su propia seguridad, lea y entienda el manual del usuario. No dejar en funcionamiento sin supervisión. No recoger cenizas calientes, brasas, materiales tóxicos, materiales inflamables u otros materiales peligrosos. No usar cerca de líquidos o vapores explosivos. | Pour votre propre sécurité, veuillez lire et bien comprendre votre manuel du propriétaire. Ne pas laisser fonctionner sans surveillance. Ne ramassez pas de cendres chaudes, braise ou encore de matériaux toxiques, inflammables ou dangereux. Ne pas utiliser près de liquides ou vapeurs explosifs. |
|---|---|---|

(*Id.*)

The owner's manual further warns, "Sparks inside the motor can ignite flammable vapors or dust. To reduce the risk of fire or explosion, do not use near combustible liquids, gases, or dusts, such as gasoline or other fuels, lighter fluid, cleaners, oil-based paints, natural gas, coal dust, magnesium dust, grain dust, aluminum dust or gun powder." (Pl.'s 56.1 Statement, Ex. E (Doc. No. 25-5) at 3.) Both the warning affixed to the Vacuum and the one in the manual are accompanied by a graphic of a triangle with an exclamation point in the center. (Pl.'s 56.1 Statement, Ex. E at 3; Ex. H.) Jiang read these warnings, and was able to understand the specific instructions not to use the Vacuum near combustible dusts, or to pick up flammable materials. (Pl.'s 56.1 Statement ¶ 54–55.)

From 2003 to 2014, Jiang performed around 10 floor refinishing projects that involved the use of Minwax. (Jiang Dep. at 191:1–23.) The Minwax can bears the following warnings:

**WARNING! COMBUSTIBLE! VAPOR HARMFUL. IRRITATES EYES, SKIN AND RESPIRATORY TRACT.** Before using, carefully read CAUTIONS on back panel.

DANGER: Rags, steel wool or other waste soaked with this product, and sanding residue may spontaneously catch fire if improperly discarded. Immediately place rags, steel wool, other waste soaked with this product, and sanding residue in a sealed, water-filled metal container. Dispose of in accordance with local fire regulations.

(Pl.'s 56.1 Statement, Ex. F (Doc. No. 25-6) at 3–4). Jiang admits in his Rule 56.1 Statement that he "was instructed and well aware that oil-based polyurethane was combustible and flammable," and that he "was aware of the dangers of sanding residue while using a sanding machine." (Pl.'s 56.1 Statement ¶ 42; Jiang Dep. at 206:16–209:10.) Jiang read the Minwax labels at least once, including the warning on the front that says "combustible." (Jiang Dep. at 204:19–22; 250:2–6.)

4

Jiang received on-the-job training on how to apply Minwax safely. (Jiang Dep. at 205:25–206:15.) As part of this training, he was taught to be careful when sanding floors treated with Minwax because the sanding dust could catch fire. (Jiang Dep. at 206:16–207:22.) Jiang was told to be careful when discarding sanding dust because of the risk of fire. (Jiang Dep. at 214:10–17.) Jiang's brother-in-law told him about an incident where someone put polyurethane sanding dust in a bag, and the bag began emitting smoke. (Jiang Dep. at 213:3–214:3.) Jiang's brother-in-law also told him about a man who had been horribly burned by an explosion caused by vapors from a polyurethane floor product. (Jiang Dep. at 207:23–209:10.) As a result, Jiang's practice when disposing of Minwax sanding dust was to place it in a bag with water to prevent fires. (Jiang Dep. at 215:5–216:3.) When working with Minwax, Jiang would open the windows and extinguish all sources of flame to prevent explosions. (Jiang Dep. at 207:8–208:3.)

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, depositions, interrogatories, admissions, and affidavits demonstrate that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In determining whether a genuine issue of material fact exists, the evidence of the nonmovant "is to be believed" and the court must draw all "justifiable" or "reasonable" inferences in favor of the nonmoving party. *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)); *see also Brosseau v. Haugen*, 543 U.S. 194, 195 n.2 (2004). Once the moving party has satisfied its burden, "the nonmoving party must come forward with 'specific

facts showing there is a *genuine issue for trial*,'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)), and "may not rely on conclusory allegations or unsubstantiated speculation," *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998) (internal citations omitted). In other words, the nonmovant must offer "concrete evidence from which a reasonable juror could return a verdict in his favor." *Anderson*, 477 U.S. at 256. Where "the nonmoving party bears the burden of proof at trial, summary judgment is warranted if the nonmovant fails to make a showing sufficient to establish the existence of an element essential to [its] case." *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (quoting *Celotex*, 477 U.S. at 322) (internal quotation marks omitted) (alteration in original). Thus, a "defendant moving for summary judgment must prevail if the plaintiff fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir. 1996) (citing *Anderson*, 477 U.S. at 247–48).

### III.  FAILURE TO WARN

Under New York law, a plaintiff asserting a failure to warn claim must show "(1) the manufacturer has a duty to warn; (2) against dangers resulting from foreseeable uses about which it knew or should have known; and (3) that the failure to do so was the proximate cause of the harm." *Pinello v. Andreas Stihl Ag & Co. KG*, No. 08-CV-452 (LEK), 2011 WL 1302223, at *11 (N.D.N.Y. Mar. 31, 2011); *Barban v. Rheem Textile Sys., Inc.*, No. 01-CV-8475 (ILG), 2005 WL 387660, at *9 (E.D.N.Y. Feb. 11, 2005), *aff'd*, 147 F. App'x 222 (2d Cir. 2005). Here, Jiang claims that the defendants had a duty to warn him about the risks of using the Vacuum with polyurethane sanding dust, and that the Vacuum's warnings were inadequate. Specifically, he

asserts that the warnings should have explicitly warned him about the dangers of vacuuming polyurethane sanding dust.

### A. The Warnings Were Adequate to Satisfy the Duty to Warn

Where a defendant has a duty to warn, that duty can be satisfied by providing an adequate warning. Factors to be considered when determining whether a warning is adequate as a matter of law are "whether the warning is accurate, clear, and consistent on its face, and whether it portrays the risk with sufficient intensity." *Martin v. Hacker*, 83 N.Y.2d 1, 10 (1993); *Kandt v. Taser Int'l, Inc.*, No. 09-CV-0507 (NPM) (ATB), 2012 WL 2861583, at *4 (N.D.N.Y. July 10, 2012), *aff'd* 527 F. App'x 51 (2d Cir. 2013).

Claims regarding the adequacy of a warning are normally fact-specific, and therefore, are not usually resolved on summary judgment. *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 366 (2d Cir. 1997). However, in a proper case, the court can decide adequacy as a matter of law at the summary judgment stage. *See Moltner v. Starbucks Coffee Co.*, No. 08-CV-9257 (LAP), 2009 WL 3573190, at *9 (S.D.N.Y. Oct. 23, 2009), *aff'd*, 624 F.3d 34 (2d Cir. 2010); *Martin*, 83 N.Y.2d at 10; *Alessandrini v. Weyerhauser Co.*, 207 A.D.2d 996, 996–97 (4th Dep't 1994); *Wolfgruber v. Upjohn Co.*, 72 A.D.2d 59, 62, (4th Dep't 1979), *aff'd*, 52 N.Y.2d 768 (1980). When a warning raises no triable question of fact as to adequacy, summary judgment may be granted. *Fane v. Zimmer, Inc.*, 927 F.2d 124, 130 (2d Cir. 1991).

The warning on the Vacuum reads: "**WARNING**…Do not pick up hot ashes, coals, toxic, flammable or other hazardous materials." (Pl.'s 56.1 Statement, Ex. H.) Additionally, the user's manual reads: "To reduce the risk of fire or explosion, do not use near combustible liquids, gases or dusts." (Pl.'s 56.1 Statement, Ex. E at 3.) Both warnings are accompanied by a graphic of a triangle with an exclamation point. (Pl.'s 56.1 Statement, Ex. E at 3; Ex. H.) These

warnings clearly and unambiguously warn the user to avoid using the Vacuum to collect flammable materials, including flammable dusts, such as Minwax sanding residue.

Jiang contends that, despite including a warning not to use the Vacuum to pick up flammable dusts, the defendants should be held liable because they did not specifically mention polyurethane sanding dust. This argument fails to create a triable issue of fact as to adequacy.

First, the defendants' warnings clearly and accurately warn the user to avoid using the Vacuum to collect, not only flammable materials, but flammable *dusts*, which encompasses polyurethane sanding dust. The warnings contain no inconsistencies, and the risk was conveyed with sufficient intensity.

Moreover, a warning that conveys a general hazard can be adequate even if it does not also describe specific examples of that hazard. *See Moltner*, 2009 WL 3573190, at *9. In *Moltner*, the court held that a warning that tea "is extremely hot" was adequate because it put customers on notice of all the different ways the tea could burn them, and a specific warning that the lid of the cup may pop off was not required. *Id.* Similarly, here, the warning that the Vacuum should not be used to collect flammable dusts put Jiang on notice of all the different flammable dusts that could potentially catch fire and injure him.

The defendants, having warned about the general hazard, were not required to provide a list of every single flammable substance that the Vacuum could be foreseeably used near, nor would it have been possible to do so. Attempting to create such a detailed warning could render the warning unclear, and therefore inadequate. In addition, "[r]equiring too many warnings trivializes and undermines the entire purpose of the rule, drowning out cautions against latent dangers of which a user might not otherwise be aware," and "would neutralize the effectiveness of warnings." *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 242 (1998). The defendant's warning

8

was not inadequate simply because Jiang has identified an additional detail that could have been added to it. *See Moltner*, 2009 WL 3573190, at *9 (quoting *McMahon v. Bunn-O-Matic Corp.*, 150 F.3d 651, 656 (7th Cir. 1998) ("Insistence on more detail can make any warning, however elaborate, seem inadequate.")).

Therefore, as a matter of law, the warnings were adequate to satisfy defendants' duty to warn Jiang that he might be burned if he used the Vacuum to pick up Minwax sanding dust.

### B. Knowledgeable User

Moreover, defendants are entitled to summary judgment because Jiang had knowledge of the danger, and thus, cannot show that the deficient warnings were the proximate cause of his injuries. "Where the injured party was fully aware of the hazard through general knowledge observation or common sense," that knowledge "obviate[s] the failure to warn as a legal cause of an injury resulting from that danger." *Liriano*, 92 N.Y.2d at 241. Thus, "[w]hen the user is fully aware of the nature of the product and its dangers…the supplier cannot be held liable for failure to warn him." *Billiar v. Minnesota Min. & Mfg. Co.*, 623 F.2d 240, 243 (2d Cir. 1980). "The rationale for this 'knowledgeable user' exception is that knowledge of the danger is equivalent to prior notice; no one needs notice of that which he already knows." *Id.* "The knowledgeable user exception is usually reserved for professionals or other experts who are experienced with the product in question." *Donald v. Shinn Fu Co. of Am.*, No. 99-CV-6397 (ARR), 2002 WL 32068351, at *8 (E.D.N.Y. Sept. 4, 2002) (citing *Billiar*, 623 F.2d at 243). Here, given that Jiang was a professional contractor for over 10 years, that he had used Minwax on 10 prior occasions, and had purchased and used multiple Ridgid vacuums during that time, he satisfies this criterion. (Jiang Dep. at 48:14–24, 191:1–23, 127:7–17.)

9

The knowledgeable user exception focuses on the actual knowledge of the plaintiff. *Shinn Fu*, 2002 WL 32068351, at *9. The user must have been aware of the specific hazard that caused the injury, and must have appreciated the severity of the danger. *Id.* Based on the undisputed facts in this case, Jiang is a knowledgeable user because he was aware of the specific hazard that caused his injury. Crucially, Jiang admitted that at the time of his accident, he was aware both that the dust produced by sanding floors treated with Minwax was flammable, and that the Vacuum warned not to use it to pick up flammable materials. (Jiang Dep. at 206:16–209:10; Pl.'s 56.1 Statement ¶ 55.) Jiang admits that he read and understood the Minwax label, which warns both that the product is combustible, and that the product's sanding residue can spontaneously catch fire. (Jiang Dep. at 204:19–22; 250:2–6.) In addition, Jiang acknowledged that he received on-the-job training about preventing fires when sanding floors treated with Minwax. (Jiang Dep. at 205:25–206:15.) He testified that when working with Minwax, his regular practice was to store sanding dust in a water-filled container to prevent fire, and to extinguish all sources of flame to prevent explosions. (Jiang Dep. at 207:8–208:3, 215:5–216:3.) Further, Jiang's brother-in-law told him about an incident in which polyurethane sanding dust, stored in a bag, began emitting smoke. (Jiang Dep. at 213:3–214:3.) As Jiang testified, he was aware of the severity of the danger because his brother-in-law informed him about a different incident in which a man was very badly burned by an explosion caused by polyurethane. (Jiang Dep. at 207:23–209:10.)

Jiang was also aware that the Vacuum should not be used to pick up flammable materials. (Pl.'s 56.1 Statement ¶ 55–56.) Jiang admits that he read and understood the warning affixed to the Vacuum, which states that it should not be used to pick up flammable materials, as well as the warning in the owner's manual, which states that, in order to reduce the risk of fire, the

Vacuum should not be used near combustible dusts. (Pl.'s 56.1 Statement, Ex. E. at 3; Ex. H.) Jiang admits in his Rule 56.1 Statement that he "was able to read and understand these instructions." (Pl.'s 56.1 Statement ¶ 55.) Based on these undisputed facts, Jiang had knowledge of the danger, and he has failed to demonstrate as a matter of law that defendants' allegedly inadequate warnings were a proximate cause of his injury.

Jiang attempts to manufacture a dispute as to what hazards he was aware of through his unsworn responses to defendants' Rule 56.1 statement. (Pl.'s 56.1 Statement ¶ 56, 72). Without citing any admissible evidence, Jiang claims that he "did not believe dust from the dried polyurethane was combustible, flammable or hazardous because it did not say so on the polyurethane can." *Id.* This is contradicted by Jiang's own sworn testimony, which shows that the Minwax label carried a warning regarding this very danger, and that he knew Minwax dust could combust. (Jiang Dep. at 207:11–22.) These contradictory responses are insufficient to create a genuine dispute of fact. *See Kennedy v. City of New York*, 570 F. App'x 83, 84 (2d Cir. 2014) ("a party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony") (quoting *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996).

Because there is no genuine dispute over the fact that Jiang was aware of the specific risk which caused his injury, he has failed to show that the Vacuum's allegedly inadequate warnings were the cause of his injuries. As a result, summary judgment is appropriate.

IV.     CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted in its entirety.  The Clerk of Court is directed to enter judgment accordingly and close the case.

SO ORDERED.

*Roslynn R. Mauskopf*

Dated: Brooklyn, New York
       March 27, 2018

_____
ROSLYNN R. MAUSKOPF
United States District Judge